LAW OFFICES
### SCHMITTINGER AND RODRIGUEZ, P.A.
414 SOUTH STATE STREET
POST OFFICE BOX 497
DOVER, DELAWARE 19901
TELEPHONE 302-674-0140
FAX 302-674-1830

NICHOLAS H. RODRIGUEZ
PAUL H. BOSWELL
JOHN J. SCHMITTINGER
DOUGLAS B. CATTS
WILLIAM D. FLETCHER, JR.
CRAIG T. ELIASSEN
WILLIAM W. PEPPER SR.
CRYSTAL L. CAREY*
SCOTT E. CHAMBERS*
FRED A. TOWNSEND III
NOEL E. PRIMOS
DAVID A. BOSWELL
WALT F. SCHMITTINGER
R. SCOTT KAPPES
JEFFREY J. CLARK
BETH B. MILLER
KYLE KEMMER
KATHRYN J. GARRISON
ERIN K. FITZGERALD
RYAN C. MEADOWS
B. BRIAN BRITTINGHAM

*ALSO ADMITTED IN MARYLAND

HAROLD SCHMITTINGER
OF COUNSEL

NEWARK OFFICE
CHRISTIANA EXECUTIVE CAMPUS
220 CONTINENTAL DRIVE, STE 203
NEWARK, DELAWARE 19713
TELEPHONE 302-894-1960
FAX 302-894-1965

REHOBOTH BEACH OFFICE
WACHOVIA BANK BUILDING
18489 COASTAL HIGHWAY, 2ND FLR
REHOBOTH BEACH, DELAWARE 19971
TELEPHONE 302-227-1400
FAX 302-645-1843

ODESSA OFFICE
ODESSA PROFESSIONAL PARK
POST OFFICE BOX 626
ODESSA, DELAWARE 19730
TELEPHONE 302-378-1697
FAX 302-378-1659

August 7, 2007

**VIA ELECTRONIC FILING**

The Honorable Mary Pat Thynge
United States District Court
844 King Street
Wilmington, DE  19801

RE:   Laymon v. Lobby House, Inc.
      C.A. No. 07-129 MPT

Dear Judge Thynge:

This is Plaintiff's response regarding the discovery dispute that is to be heard by you on Thursday, August 9, 2007, at 4:00 p.m.

As indicated by Defendant, by letter dated June 22, 2007, Defendant requested a written statement of damages pursuant to D. Del. LR 9.4(b).  The undersigned responded to this request on July 3, 2007, by stating the amount that Plaintiff is claiming for unliquidated damages, but further indicating that the July 3, 2007, statement did not include Plaintiff's claims for liquidated damages, attorney's fees, and costs.

First of all, Plaintiff objects to Defendant's filing of the amount claimed by Plaintiff for unliquidated damages in Defendant's August 3, 2007, submission to this Court.  D. Del. LR 9.4(b) clearly states that the statement of damages "shall not be filed except on Court order."  Accordingly, Plaintiff requests that this Court strike that portion of Defendant's August 3, 2007, submission which reveals the amount of Plaintiff's claimed unliquidated damages.

August 7, 2007
Page 2

Secondly, D. Del. LR 9.4(b) does not require Plaintiff to state any damages claimed other than unliquidated damages. D. Del. LR 9.4 deals with unliquidated damages, as demonstrated by its title. While subsection (a) of the Rule provides that a specific amount of unliquidated damages is not to be stated in a pleading, subsection (b) provides a specific procedure whereby the opposing party may request that the amount of unliquidated damages be stated by the party filing the pleading. There are certainly other discovery methods whereby an opposing party may request the pleading party's basis for claiming types of damages other than unliquidated damages, but the ten-day procedure set forth in D. Del. LR 9.4(b) is not such a method.

Contrary to Defendant's assertions, <u>Kellam Energy, Inc. v. Duncan</u>, 1986 WL 15744 (D. Del.)(copy attached), does not hold that former Delaware Local Rule 2.6 requires that a party state the amount of damages claimed other than unliquidated damages pursuant to the procedure set forth in D. Del. LR 9.4(b) or a similar procedure. Rather, the <u>Kellam</u> decision simply briefly refers to former Rule 2.6 by noting that it provides that a pleading stating a claim for unliquidated damages need not state a specific sum claimed. <u>Id.</u> at *2. Indeed, the <u>Kellam</u> Court was dealing with motions regarding a party's alleged non-responsiveness to interrogatories. In the instant case, Defendant has served no interrogatories upon Plaintiff.

In short, Plaintiff has adequately responded to Defendant's request pursuant to D. Del. LR 9.4(b). This Court should deny Defendant's request for a further response pursuant to that Rule.

Respectfully submitted,

NOEL E. PRIMOS
NEP:rp

Attachment

cc: Ronald G. Poliquin, Esquire

Westlaw.

1986 WL 15744

Page 1

Not Reported in F.Supp., 1986 WL 15744 (D.Del.)

**(Cite as: 1986 WL 15744 (D.Del.))**

**H**
Only the Westlaw citation is currently available.

United States District Court, D. **Delaware**.
KELLAM ENERGY, INC., a Virginia corporation as successor to Kellam, Inc. and Shore Atlantic, Inc., Plaintiff,
v.
Robert M. DUNCAN, t/a Super Soda, a **Delaware** resident, and R. C. Nehi Bottling, Inc., t/a Super Soda, a **Delaware** corporation, Defendants.
**Civ. A. No. 84-579 CMW.**

December 9, 1986.
Charles S. Crompton, Jr., and W. Harding Drane, Jr., Potter, Anderson & Corroon, Wilmington, for plaintiff; Willcox & Savage, P.C., Norfolk, Virginia, of counsel.

R. Brandon Jones, Hudson, Jones, Jaywork & Williams of Dover, and William J. Wier, Jr., and Joseph G. Krauss, of Herlihy & Wier, Wilmington, for defendants.

OPINION

CALAB M. WRIGHT, Senior District Judge.

*1 Plaintiff filed a motion for sanctions pursuant to **Rule** 37, Fed.R.Civ.P. for defendants' failure to respond to interrogatories regarding the damages defendants' request in their antitrust counterclaim, and for failing to obey this Court's August 25, 1986 Order. The Court will deny the motion for sanctions, but will require defendants to provide more specific answers to plaintiff's interrogatories concerning damages resulting from: (1) lost gasoline sales suffered by defendant; (2) lost 'inside' sales; (3) loss of customer sales resulting from conflicting prices charged for Kellam/non-Kellam gas.

A. Sanctions

**Rule** 37(b)(2) authorizes the Court '[to] make such orders in regard to failure [to obey an order] as are just. . . .' F.R.C.P. 37(b)(2). See also Harlem River Con.C., Inc. v. Associates G. of Harlem, Inc., 64 F.R.D. 459, 465 (S.D.N.Y. 1974); Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 503 (4th Cir. 1977); Beau Products, Inc. v. Peruizan Products, Inc., 97 F.R.D. 50, 53 (M.D. Pa. 1983). Among the **Rule** 37 sanctions that a Court may employ are striking out pleadings, dismissing the action in whole or in part, and entering a default judgment against the disobedient party. Other possible penalties include refusing to allow the offending party to support designated claims and requiring the recalcitrant party or his lawyer to pay reasonable expenses, including attorneys' fees incurred because of the dereliction. Matter of MacMeekin, 722 F.2d 32 (3d Cir. 1983).

Plaintiff does not request dismissal in the case at bar. See Societe Internationale v. Rogers, 357 U.S. 197 (1985) (imposing constitutional limits on the power of the courts to dismiss an action). Instead, plaintiff seeks three measures of relief: (1) exclusion of evidence on the various damage claims and of evidence concerning any damage evidence not described completely in defendants' interrogatory answers; (2) the award of a factual finding that Kellam Energy's actions did not cause defendants to lose any gasoline sales or inside sales between January 1, 1981 and December 31, 1984; and (3) attorneys' fees and costs.

The Third Circuit is no stranger to requests for sanctions for failure to answer interrogatories and plaintiff relies heavily on In Re Professional Hockey Antitrust Litigation, 63 F.RD. 641 (E.D.Pa. 1974), rev'd. on other grounds, 531 F.2d 1188 (3d Cir.), rev'd., 427 U.S. 639 (1976). There, the court imposed draconian sanctions by dismissing plaintiff's complaint for failure to answer

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1986 WL 15744                                                                                           Page 2

Not Reported in F.Supp., 1986 WL 15744 (D.Del.)

**(Cite as: 1986 WL 15744 (D.Del.))**

interrogatories in contravention of a court order. Judge Higginbotham described counsel's conduct as demonstrating 'callous disregard of responsibilities counsel owe to the Court and to their opponents. The practices of the plaintiffs exemplify flagrant bad faith . . . if the sanction of dismissal is not warranted by the circumstances of this case, then the Court can envisage no set of facts whereby that sanction should ever be applied.' 427 U.S. at 640-41 quoting 63 F.R.D. 641, 656. See also Al Barnett & Son, Inc. v. Outboard Marine Corp., 611 F.2d 32, 35-36 (3d Cir. 1979).

*2 In that case, there were 'seventeen months where crucial interrogatories remained substantially unanswered despite numerous extensions granted at the eleventh hour and, in many instances, beyond the eleventh hour.' Id. at 656. In the case at bar, there is no indication of wilful violations by defendants' counsel. Further, defendants attempted to answer plaintiff's interrogatories by timely submission, and there has been nowhere near the delay found in In Re Professional Hockey Antitrust Litigation.

Because this case differs from the In Re National Hockey League, the Court declines to impose the drastic sanctions of assessing attorneys' fees, dismissing a complaint, or making evidentiary findings. Instead, this Court will follow the ruling in Harlem River, supra, 64 F.R.C. at 466-467, where the court imposed sanctions in the form of requiring the plaintiff to provide, within 20 days, more specific answers to interrogatories. Id. at 465-466. The deficiencies in the defendants' responses to plaintiff's interrogatories are set out below.

B. The Measure of Antitrust Damages.

It is difficult to measure the precise amount of antitrust damages. A leading treatise notes: 'The kinds of calculations necessary to estimate the plaintiff's damages are usually quite rough. In view of the highly approximate character of most such estimates, relatively little is gained by relentless pursuit of refinements in the damage assessment.' Areeda and Turner Antitrust Law ¶344f (1978).

Establishing the precise amount of damage caused by a violation of the antitrust laws is often impossible. Story Parchment Co. v. Patterson Parchment Paper Co., 282 U.S. 555, 563 (1931); J. Truett Payne Co. v. Chrysler Motors Corp., 454 U.S. 557 (1981). See also Kestenbaum v. Falstaff Brewery Corp., 514 F.2d 690, 698 (5th Cir. 1975) (plaintiff may recover upon a showing of the extent of the damages as a matter of just and reasonable inference, although the result may be only an approximation). Because antitrust suits serve a public function, their prosecution should not be thwarted by accounting considerations. Martin B. Glauser Dodge Co. v. Chrysler Corp., 418 F.Supp. 1009, rev'd. on other grounds, 570 F.2d 72, cert. denied, 436 U.S. 913 (1978).

Broad discretion is given to the trier of fact. 'It is not the rule that in an action for damages for violation of the antitrust laws plaintiff is limited to recover only the specific items of damage which he can prove with reasonable certainty. On the contrary, the trier of the facts may make a just and reasonable estimate of the damage based on relevant data and may act upon probable and inferential as well as direct and positive proof.' Elyria-Loraine Broadcasting Co. v. Loraine Journal Co., 358 F.2d 790 (6th Cir. 1966). **Rule 2.6** of the **Local Rules** of Civil Procedure, District of **Delaware**, also allows for a rough estimate of damages (a claim for relief in the nature of unliquidated money damages need not state a specific sum). This case law suggests that defendants will only have to partially comply with plaintiff's demands.

*3 Plaintiff's Interrogatory No. 35 asks for three things: (a) the amount of damages claimed; (b) the method used to compute or calculate each such amount, and (c) all data and other facts used or relied upon in such computation or calculation.

Defendants have not provided a total amount of damages claimed. This they do not have to do. But they must provide more information concerning the method used to calculate damages and the underlying data supporting damage claims.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1986 WL 15744                                                                                                    Page 3

Not Reported in F.Supp., 1986 WL 15744 (D.Del.)

**(Cite as: 1986 WL 15744 (D.Del.))**

C. Responses to Plaintiff's Interrogatories on the Antitrust Counterclaim.

1. Lost Sales.

Defendants contend that nationally, and regionally, between 1981 and 1983 gasoline retail outlets decreased while the sale of gasoline at each retail store increased. During this same period, the number of Kellam dealers remained static, while the volumes of those dealers plummeted. Simultaneously the output at Kellam's own retail stores increased drastically. Defendants believe this is a result of Kellam's illegal marketing practices. Super Soda would have retained lost customer and expanded their sales.

Defendants want the jury to use different estimates for the price of the lost gas and the volumetric amount of lost sales. But, defendants admit 'plaintiff's counsel is just as able to calculate its possible exposure by hypothetical calculations based on the general evidence as are we.' Defendants' Answering Brief at 8. If this is the case, defendants should go ahead and calculate an estimate of these lost sales.

In an antitrust action where defendants' antitrust violations have contributed to a decline in plaintiff's sales, the probable amount of loss should be submitted to the jury and recovery is not barred because of uncertainty. Hansen Packing Co. v. Swift & Co., 27 F.Supp. 364 (D.C. N.Y. 1939). The jury, however, needs more to work with than the numbers provided by the defendants. The defendants must provide specific answers regarding price, volume and output, with specific, if only hypothetical, damage estimates.

2. Lost Inside Sales.

Defendants assert a relationship between lost gasoline sales and lost sales inside the Super Soda stores. Defendants' claim that there is a 4:1 ratio of lost gasoline sales to lost sales inside the store. Defendants' Answering Brief at pp. 8-9. Although defendants assert this ratio, they do not describe the regression analysis and methodology required to arrive at it.

Defendants will be required to provide: (1) the volume of the alleged lost gasoline sales: (2) the net profit defendants claim they would have made on the sale of each gallon of gasoline; (3) the statistical evidence which shows a relationship between inside and sales and gasoline sales; (4) the volume of lost inside sales; and (5) the net profit that would have been earned on these sales.

3. Loss Due to Confusion Over Conflicting Prices Charged for Kellam and Non-Kellam Gasoline.

Defendants request damages for this confusion. But they do not indicate anything about the methodology or considerations involved in computing these damages. Nor do defendants, in their answering brief, even meet plaintiff's objections to these calculations. Defendants must provide specific answers to these questions.

4. Loss of Discount Image, Goodwill and Reputation.

*4 Damages for loss of goodwill and reputation are allowed in antitrust cases. Kestenbaum v. Falstaff Brewing Corp., 514 F.2d 690, 698 (5th Cir. 1975), cert. denied, 424 U.S. 943 (1976). These numbers cannot be calculated with precision.

CONCLUSION

Defendants admit that the raw information which will enable computation of these damages has been assembled and will be presented at trial, together with an explanation of various ways it can be utilized by the jury to arrive at a damage component for these elements. See Supplemental Answer to Special Interrogatories at 68.

This admission compels the conclusion that defendants possess further information relating to this action that should be made available to plaintiffs.

Defendants are directed within twenty days to provide more complete and specific answers to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1986 WL 15744

Page 4

Not Reported in F.Supp., 1986 WL 15744 (D.Del.)

**(Cite as: 1986 WL 15744 (D.Del.))**

plaintiff's interrogatories regarding lost gasoline sales, lost inside sales, and loss due to consumer confusion.

Not Reported in F.Supp., 1986 WL 15744 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.