IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SHANNON A. LAYMON,                    *    C.A. No. 07-129 MPT
                                      *
              Plaintiff,              *
                                      *
      v.                              *
                                      *
LOBBY HOUSE, INC.,                    *
a Delaware corporation,               *
                                      *
              Defendant.              *


## JOINT PROPOSED FINAL JURY INSTRUCTIONS


**SCHMITTINGER & RODRIGUEZ, P.A.**        **YOUNG, MALMBERG & HOWARD, P.A.**

**NOEL E. PRIMOS, ESQUIRE**               **RONALD G. POLIQUIN, ESQUIRE**
I.D. #3124                                I.D. #4447
414 State Street                          30 The Green
P.O. Box 497                              Dover, DE   19901
Dover, DE 19903-0497

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . .   1

PROVINCE OF THE COURT AND JURY . . . . . . . . . . . . .   2

EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . .   3

BURDEN OF PROOF . . . . . . . . . . . . . . . . . . . . .   5

FEDERAL CIVIL RIGHTS STATUTE . . . . . . . . . . . . . .   7

HARASSMENT — HOSTILE WORK ENVIRONMENT —
     NO TANGIBLE EMPLOYMENT ACTION . . . . . . . . . . .   8

RETALIATION . . . . . . . . . . . . . . . . . . . . . . .  11

HOSTILE OR ABUSIVE WORK ENVIRONMENT . . . . . . . . . . .  13

COMPENSATORY DAMAGES — GENERAL INSTRUCTION . . . . . . . .  15

PUNITIVE DAMAGES . . . . . . . . . . . . . . . . . . . .  18

NOMINAL DAMAGES . . . . . . . . . . . . . . . . . . . . .  20

WORKERS' COMPENSATION RETALIATION - 19 DEL. C. §2365 . . . .  21

SLANDER AS A MATTER OF LAW . . . . . . . . . . . . . . .  23

DEFAMATION - DAMAGES -- COMPENSATORY OR NOMINAL . . . . . .  25

DEFAMATION - DAMAGES -- DUTY TO MITIGATE . . . . . . . . .  27

TRUTH OR SUBSTANTIAL TRUTH AS A DEFENSE . . . . . . . . .  28

DIRECT AND CIRCUMSTANTIAL EVIDENCE . . . . . . . . . . . .  30

OBJECTIONS - RULINGS ON EVIDENCE . . . . . . . . . . . .  31

CREDIBILITY OF WITNESSES . . . . . . . . . . . . . . . .  32

STIPULATION OF FACT . . . . . . . . . . . . . . . . . . .  33

DELIBERATIONS . . . . . . . . . . . . . . . . . . . . . .  34

i

## INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen carefully to everything I have to say.

1

## PROVINCE OF THE COURT AND JURY

I have instructions for your guidance as jurors in this case.

You have heard the evidence, now you must decide what the facts are, and then apply those facts to the law that I will give you.

You and only you will be the judges of the facts.  You will have to decide what happened.  I play no part in judging the facts.  You should not take anything I have said or done during this trial as indicating what I think of the evidence or what your verdict should be.  My role is to be the judge of the law.  I make whatever legal decisions have to be made during the course of the trial, and I have explained to you the legal principles that must guide you in your decisions.  You must follow that law whether you agree with it or not.

Source:

3rd Circuit Court of Appeals, Model Civil Jury Instructions, §1.1, (2004).

## EVIDENCE

The evidence from which you are to find the facts consist of the following:

1.    The testimony of the witnesses;

2.    Documents and other things received as exhibits;

3.    Any facts that are stipulated--that is, formally agreed to by the parties; and

4.    Any facts that are judicially noticed--that is, facts I say you must accept as true even without other evidence.

The following things are not evidence:

1.    Statements, arguments, and questions of the lawyers for the parties in this case;

2.    Objections by lawyers;

3.    Any testimony we tell you to disregard; and

4.    Anything you  may see or hear about his case outside the courtroom.

You must make your decisions base only on the evidence that you see and hear in court.  Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusions, you are free to reach that conclusion.

3

There are rules that control what can be received into evidence. When a lawyer asked a question or offers an exhibit into evidence, and a lawyer on the other side thought that it is not permitted by the rules of evidence, that lawyer may have objected. This simply means that the lawyer was requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection was made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection was sustained, ignore the question. If it was overruled, treat the answer like any other. If you were instructed that some item of evidence was received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may have been ordered struck from the record and you may have been instructed to disregard this evidence. Do not consider any testimony or other evidence that got struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

Source:

3rd Circuit Court of Appeals, Model Civil Jury Instructions, §1.5, (2004).

4

## BURDEN OF PROOF

This is a civil case. The Plaintiff, Shannon A. Laymon, is the party who brought this lawsuit. The Defendant, Lobby House, Inc., is the party against whom the lawsuit was filed. Ms. Laymon has the burden of proving her case by what is called the preponderance of the evidence. That means Ms. Laymon has to prove to you, in light of all the evidence, that what she claims is more likely so than not. To say it differently: if you were to put the evidence favorable to Ms. Laymon and the evidence favorable to the Lobby House on opposite sides of the scales, Ms. Laymon would have to make the scale tip somewhat on her side. If Ms. Laymon fails to meet this burden, the verdict must be for Lobby House. If you find after considering all the evidence that a claim or fact is more likely so than not, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, called affirmative defenses, Lobby House has the burden of proving the elements of the defense by a preponderance of the evidence. I will instruct you on the facts that will be necessary for you to find on this affirmative defense. An affirmative defense is proven if you find, after considering all evidence in this case, that Lobby House has

5

succeeded in proving that the required facts are more likely so than not.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

## FEDERAL CIVIL RIGHTS STATUTE

In this case the Plaintiff, Shannon A. Laymon, makes a claim under a Federal Civil Rights statute that prohibits employers from discriminating against an employee in the terms and conditions of employment because of the employee's race, color, religion, sex, or national origin.

More specifically, Ms. Laymon claims that she was subjected to a hostile work environment by the Defendant, Lobby House, Inc., because of her sex.

Lobby House denies that Ms. Laymon  was discriminated against in any way. Further, Defendant asserts that Ms. Laymon failed to use Lobby House policies to complain about the harassment.

I will now instruct you more fully on the issues you must address in this case.

Source:

3rd Circuit Court of Appeals, Model Civil Jury Instructions, §5.0 (2004).

7

<u>HARASSMENT — HOSTILE WORK ENVIRONMENT —
NO TANGIBLE EMPLOYMENT  ACTION</u>

Ms. Laymon claims that she was subjected to harassment by agents of Defendant, including Ken Caudill, Don Wilmot, Rick Anibal, and Brian Doucette, and that this harassment was motivated by her gender.

Lobby House is liable for the actions of Ken Caudill, Don Wilmot, Rick Anibal, and Brian Doucette in Ms. Laymon's claim of harassment if Ms. Laymon proves all of the following elements by a preponderance of the evidence:

First:  Ms. Laymon was subjected to demeaning conduct and language directed at women in general and Ms. Laymon in particular by Mr. Caudill, Mr. Wilmot, Mr. Anibal, and/or Mr. Doucette.

Second:  the conduct of Mr. Caudill, Mr. Wilmot, Mr. Anibal, and/or Mr. Doucette was not welcomed by Ms. Laymon.

Third: Caudill's, Wilmot's, Anibal's, and Doucette's conduct was motivated by the fact that Ms. Laymon is a woman.

Fourth: The conduct was so  severe or pervasive that a reasonable person in Ms. Laymon's position would find Ms. Laymon's work environment to be hostile or abusive. This element requires you to look at the evidence from the point of view of a reasonable woman's reaction to Ms. Laymon's work environment.

Fifth: Ms. Laymon believed her work environment to be hostile or abusive as a result of the conduct of these individuals.

Sixth: With respect to Mr. Doucette's conduct, management level employees knew, or should have known, of the abusive

8

conduct. Management level employees should have known of the abusive conduct if 1)  an employee provided management level personnel with enough information to raise a probability of sexual harassment in the mind of a reasonable employer, or if 2) the harassment was so pervasive and open that a reasonable employer would have had to be aware of it.

If any of the above elements has not been proved by a preponderance of the evidence, your verdict must be for Lobby House and you need not proceed further in considering this claim. If you find that the elements have been proved, then you must consider Lobby House's affirmative defense. I will instruct you now on the elements of that affirmative defense.

You must find for Lobby House if you find that Lobby House has proved both of the following elements by a preponderance of the evidence:

First: Lobby House exercised reasonable care to prevent harassment in the workplace on the basis of sex, and also exercised reasonable care to promptly correct any harassing behavior that does occur.

Second: Ms. Laymon unreasonably failed to take advantage of any preventive or corrective opportunities provided by Lobby House.

Proof of the four following facts will be enough to establish the first element that I just referred to, concerning prevention and correction of harassment:

9

      1.  Lobby House had established an explicit policy against harassment in the workplace on the basis of sex.

      2.  That policy was fully communicated to its employees.

      3.  That policy provided a reasonable way for Ms. Laymon to make a claim of harassment to higher management.

      4.  Reasonable steps were taken to correct the problem, if raised by Ms. Laymon.

On the other hand, proof that Ms. Laymon did not follow a reasonable complaint procedure provided by Lobby House will ordinarily be enough to establish that Ms. Laymon unreasonably failed to take advantage of a corrective opportunity.

Source:

3rd Circuit Court of Appeals, <u>Model Civil Jury Instructions</u>, §5.1.5(2004).

10

RETALIATION

Ms. Laymon claims that Lobby House discriminated against her because of her complaints about sexual harassment.

To prevail on this claim, Ms. Laymon must prove all of the following by a preponderance of the evidence:

First:    Ms. Laymon complained about the sexual harassment.

Second:    Ms. Laymon was subjected to a materially adverse action at the time, or after, the protected conduct took place.

Third:    There was a causal connection between Ms. Laymon's loss in hours and her termination and her complaints about the sexual harassment.

Concerning the first element, Ms. Laymon need not prove the merits of her complaints of sexual harassment, but only that she was acting under a good faith belief that her right to be free from discrimination on the basis of sex was violated.

Concerning the second element, the term "materially adverse" means that Ms. Laymon must show that cutting her hours and later terminating her was serious enough that it well might have discouraged a reasonable worker from complaining about sexual harassment.

Concerning the third element, that of causal connection, that connection may be shown in many ways. For example, you may or may not find that there is a sufficient connection through timing, that is whether the Lobby House's action followed shortly after Lobby House became aware of Ms. Laymon's complaints about sexual harassment. Causation is, however, not necessarily ruled out by a

11

## HOSTILE OR ABUSIVE WORK ENVIRONMENT

In determining whether a work environment is "hostile" you must look at all of the circumstances, which may include:

• The total physical environment of Ms. Laymon's work area.

• The degree and type of language and insult that filled the environment before and after Ms. Laymon arrived.

• The reasonable expectations of Ms. Laymon upon entering the environment.

• The frequency of the offensive conduct.

• The severity of the conduct.

• The effect of the working environment on Ms. Laymon's mental and emotional well-being.

• Whether the conduct was unwelcome, that is, conduct Ms. Laymon regarded as unwanted or unpleasant.

• Whether the conduct was pervasive.

• Whether the conduct was directed toward Ms. Laymon.

• Whether the conduct was physically threatening or humiliating.

• Whether the conduct was merely a tasteless remark.

• Whether the conduct unreasonably interfered with Ms. Laymon's work performance.

Conduct that amounts only to ordinary socializing in the workplace, such as occasional horseplay, occasional use of abusive language, tasteless jokes, and occasional teasing, does not constitute an abusive or hostile work environment. A hostile work environment can be found only if there is extreme conduct

13

amounting to a material change in the terms and conditions of employment. Moreover, isolated incidents, unless extremely serious, will not amount to a hostile work environment.

It is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude or vulgar to all employees. In order to find a hostile work environment, you must find that Ms. Laymon was harassed because of her sex. The harassing conduct may, but need not be sexual in nature. Rather, its defining characteristic is that the harassment complained of is linked to the victim's sex. The key question is whether Ms. Laymon, as a woman, was subjected to harsh employment conditions to which men were not.

It is important to understand that, in determining whether a hostile work environment existed at the Lobby House restaurant you must consider the evidence from the perspective of a reasonable woman in the same position. That is, you must determine whether a reasonable woman would have been offended or harmed by the conduct in question. You must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological or emotional well-being of a reasonable woman. The reasonable woman is simply one of normal sensitivity and emotional makeup.

Source:

3rd Circuit Court of Appeals, <u>Model Civil Jury Instructions</u>, §5.2.1 (2004).

14

COMPENSATORY DAMAGES — GENERAL INSTRUCTION

I am now going to instruct you on damages. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not Lobby House should be held liable.

If you find by a preponderance of the evidence that Lobby House intentionally discriminated against Ms. Laymon by subjecting her to a hostile work environment or by retaliating against her, then you must consider the issue of compensatory damages. You must award Ms. Laymon an amount that will fairly compensate her for any injury she actually sustained as a result of Lobby House's conduct. The damages that you award must be fair compensation, no more and no less. The award of compensatory damages is meant to put Ms. Laymon in the position she would have occupied if the discrimination had not occurred. Ms. Laymon has the burden of proving damages by a preponderance of the evidence.

Ms. Laymon must show that the injury would not have occurred without Lobby House's act. Ms. Laymon must also show that Lobby House's act played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of Lobby House's act. This test — a substantial part in bringing about the injury — is to be distinguished from the test you must employ in determining whether Lobby House's actions were motivated by discrimination. In other words, even assuming that Lobby House's actions were motivated by discrimination, Ms. Laymon is not entitled to damages for an

15

injury unless Lobby House's discriminatory actions actually played a substantial part in bringing about that injury.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life  that Ms. Laymon experienced as a consequence of Lobby House's sexual harassment of her and retaliation against her.  No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

I instruct you that in awarding compensatory damages, you are not to award damages for the amount of wages that Ms. Laymon would have earned, either in the past or in the future, if she had continued in employment with Lobby House. These elements of recovery of wages that Ms. Laymon would have received from Lobby House are called "back pay" and "front pay".

As I instructed you previously, Ms. Laymon has the burden of proving damages by a preponderance of the evidence. But the law does not require that Ms. Laymon prove the amount of her losses

16

with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit.

Source:

3rd Circuit Court of Appeals, <u>Model Civil Jury Instructions</u>, §5.4.1 (2004).

## PUNITIVE DAMAGES

Ms. Laymon claims the acts of Lobby House were done with malice or reckless indifference to her federally protected rights and that as a result there should be an award of what are called "punitive" damages. A jury may award punitive damages to punish a defendant, or to deter the defendant and others like the defendant from committing such conduct in the future.

An award of punitive damages is permissible in this case only if you find by a preponderance of the evidence that a management official of Lobby House personally acted with malice or reckless indifference to Ms. Laymon's federally protected rights.   An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway. An action is with reckless indifference if taken with knowledge that it may violate the law.

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.   I will now discuss some considerations that should guide your exercise of this discretion.

If you have found the elements permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages.   The purposes of punitive damages are to punish a defendant for a malicious or reckless disregard of federal rights, or to deter a defendant and others like the defendant from doing similar things in the future, or both.   Thus,

you may consider whether to award punitive damages to punish Lobby House. You should also consider whether actual damages standing alone are sufficient to deter or prevent Lobby House from again performing any wrongful acts it may have performed. Finally, you should consider whether an award of punitive damages in this case is likely to deter others from performing wrongful acts similar to those Lobby House may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award. That is, in deciding the amount of punitive damages, you should consider the degree to which Lobby House should be punished for its wrongful conduct, and the degree to which an award of one sum or another will deter Lobby House or others from committing similar wrongful acts in the future.

Source:

3rd Circuit Court of Appeals, <u>Model Civil Jury Instructions</u>, §5.4.2 (2004).

19

NOMINAL DAMAGES

If you return a verdict for Ms. Laymon, but Ms. Laymon has failed to prove actual injury and therefore is not entitled to compensatory damages, then you must award nominal damages of $1.00.

A person whose federal rights were violated is entitled to a recognition of that violation, even if she suffered no actual injury. Nominal damages (of $1.00) are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

However, if you find actual injury, you must award compensatory damages (as I instructed you), rather than nominal damages.

Source:

3rd Circuit Court of Appeals, Model Civil Jury Instructions, §5.4.5 (2004).

20

WORKERS' COMPENSATION RETALIATION - 19 DEL. C. §2365

Ms. Laymon has also alleged that Lobby House retaliated against her for pursing her rights under the Delaware workers' compensation statutes. A Delaware statute, 19 <u>Del</u>. <u>C</u>. §2365, makes it unlawful an employer to discharge an employee or to retaliate or discriminate in any manner against an employee because that employee has claimed or attempted to claim workers' compensation benefits from the employer.

In this case, it is undisputed that Ms. Laymon suffered a work-related injury in October 2005. Ms. Laymon alleges that subsequently, when she had difficulty getting her medical bills paid, she retained an attorney to assist her. Ms. Laymon alleges that Lobby House subsequently retaliated against her by confronting Ms. Laymon about "suing" the Lobby House; by cutting her pay check and her hours; and eventually by terminating her. You must decide whether Lobby House retaliated against Plaintiff for exercising her rights under Delaware's workers' compensation statutes.

If you find that Lobby House retaliated against Ms. Laymon for pursing her workers' compensation rights, you may award Ms. Laymon compensatory damages, including damages for emotional distress, as well as punitive damages if you find that the standard for punitive damages is met under the separate punitive damages instruction that I have given you. See <u>Mondzelewski v. Pathmark Stores, Inc.</u>, 1998 WL 960773 (Del. Super.) (violation of 19 <u>Del</u>. <u>C</u>. §2365 constitutes intentional tort for which

21

compensatory damages, including damages for emotional distress, are recoverable).

## SLANDER AS A MATTER OF LAW

The Lobby House claims that Ms. Laymon committed slander as a matter of law against them.

To prevail on this claim, the Lobby House must prove all of the following by a preponderance of the evidence:

(1)    that Ms. Laymon defamed the Lobby House; and

(2)    that the defamation has been published.

Slander is defined as oral defamation. Defamation is a communication that tends to injure a person's "reputation" in the ordinary sense of that word; that is, some statement or action that diminishes the esteem, respect, goodwill, or confidence in which the business is held and tends to cause bad feelings or opinions about the person. Defamation necessarily involves the idea of disgrace. In this sense, a communication is defamatory if it tends to lower the business in the estimation of the community or if it deters third parties from associating or dealing with the business defamed.

But defamation occurs only when the defamatory information is communicated to someone other than the business to whom it refers. In the law, this is known as "publication."

Here, the Lobby House is claiming that Ms. Laymon committed slander as a matter of law. If a statement defames the Lobby House in its business, it need not show that the defamation caused actual monetary loss in order to recover damages. In the absence of contrary evidence, the law presumes that the Lobby House, at

23

the time any defamatory statements were made, enjoyed a good name and reputation.

Source:

*See Helman v. State*, Del. Supr., 784 A.2d 1058, 1070-71 (2001)(holding that designation as a sex offender is not defamatory); *Ramunno v. Cawley*, Del. Supr., 705 A.2d 1029, 1035 (1998); *Kanaga v. Gannett Co.*, Del. Supr., 687 A.2d 173 (1996); *Gannett Co. v. Re*, Del. Supr., 496 A.2d 553 (1985); *Slawik v. News Journal Co.*, Del. Supr., 428 A.2d 15 (1981); *Spence v. Funk*, 396 A.2d 967, 969 (1978)(quoting PROSSER, HANDBOOK ON THE LAW OF TORTS ' 112 (4th ed. 1974)); *Reardon v. News Journal Co.*, Del. Supr., 164 A.2d 263 (1960)(holding defamation is actionable if it imputes something which intends to disgrace, lower, or exclude one from, society, or bring one into contempt or ridicule); *Klein v. Sunbeam Corp.*, Del. Supr., 94 A.2d 385 (1952); *Saunders v. Board of Directors, WHYY-TV*, Del. Super., 382 A.2d 257, 258-59 (1978); *Tatro v. Esham*, Del. Super., 335 A.2d 623 (1975); *Danias v. Fakis*, Del. Super., 261 A.2d 529 (1969).  *See also* RESTATEMENT (SECOND) OF TORTS ' 559 (1965).

## DEFAMATION - DAMAGES -- COMPENSATORY OR NOMINAL

If you find that the Lobby House has not sustained its burden of proof, the verdict must be for Ms. Laymon. If you do find that the Lobby House is entitled to recover for damages that were proximately caused by the defamatory statements of Ms. Laymon, you should consider the compensation to which it is entitled.

In determining the amount of compensatory damages for defamation, you must consider all the facts and circumstances of the case as revealed by the evidence.  Factors to consider include:

(1)  the nature and character of the statements;

(2)  the language used;

(3)  the occasion when the statements were published;

(4)  the extent of their circulation;

(5)  the probable effect on those to whose attention they came; and

(6)  the probable and natural effect of the defamatory statements on the Lobby House's business and standing in the community.

You should award the Lobby House damages that will fairly and adequately compensate it for:

(1)  any damage to its reputation and standing in the community;

(2)  any embarrassment, humiliation and mental suffering endured by it; and

(3)  any special injury such as monetary loss suffered by the plaintiff.

25

Your award must be based on the evidence and not on speculation. The law does not furnish any fixed standards by which to measure damage to, and counsel are not permitted to argue that a specific sum would be reasonable. You must be governed by your own experience and judgment, by the evidence in the case, and by the purpose of a damages award: fair and reasonable compensation for harm wrongfully caused by another.

A person who has been defamed but who has not suffered any injury may recover nominal damages, usually in the amount of $1.00.

Source:
*Kanaga v. Gannett Co., Inc.*, Del. Supr., 687 A.2d 173 (1996); *Gannett Co., Inc. v. Kanaga*, Del. Supr., __ A.2d __, No. 352, 1998, Walsh, J. (May 3, 2000); *Sheeran v. Colpo*, Del. Supr., 460 A.2d 522 (1983); *Spence v. Funk*, Del. Supr., 396 A.2d 967, 970-71 (1978); *Ramada Inns, Inc. v. Dow Jones & Co.*, Del. Super., 543 A.2d 313, 330-31 (1987); *Re v. Gannett Co.*, Del. Super., 480 A.2d 662 (1984) *aff'd*, Del. Supr., 496 A.2d 553 (1985); *Stidham v. Wachtel*, Del. Super., 21 A.2d 282, 282-83 (1941). *See also* RESTATEMENT (SECOND) OF TORTS '' 621-623 (1965).

26

DEFAMATION - DAMAGES -- DUTY TO MITIGATE

A business who has been defamed must use reasonable efforts, to minimize the effect of the defamation. Failure of the Lobby House to make a reasonable effort to minimize its damages does not prevent all recovery, but it does prevent recovery of the damages that might otherwise have been avoided.


Source:

Gulf Oil Corp. v. Slattery, Del. Supr., 172 A.2d 266, 270 (1961). See Wachs v. Winter, E.D.N.Y., 569 F. Supp. 1438, 1446 (1983). See also DEVITT & BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS ' 85.13 (4th ed. 1987); MCCORMICK, HANDBOOK OF THE LAW OF DAMAGES, '33 at 127 (1935); Murasky, Avoidable Consequences in Defamation: The Common-Law Duty to Request a Retraction, 40 RUTGERS LAW REV. 167 (1987).

TRUTH OR SUBSTANTIAL TRUTH AS A DEFENSE

It is an absolute defense to a claim of defamation that the alleged defamatory statements were substantially true at the time the statements were made.  Thus, even if you find that Ms. Laymon made defamatory statements about the Lobby House that proximately caused the Lobby House injury, you cannot award damages if you find that the statements were substantially true.

The alleged defamatory statements don't have to be absolutely true for Ms. Laymon to successfully assert this defense. Substantially true statements are not defamatory.  To determine if a statement is substantially true, you must determine if the alleged defamation was no more damaging to the Lobby House's reputation than an absolutely true statement would have been.  In other words, if the "gist" or "sting" of the allegedly defamatory statement produces the same effect in the mind of the recipient as the precise truth would have produced, then the statement is "substantially true" and you cannot award damages to the Lobby House for the statement.

To prevail on this defense, Ms. Laymon bears the burden of proving by a preponderance of the evidence that the alleged defamatory statements were true or substantially true.

28

Source:

*Gannett Co., Inc. v. Kanaga*, Del. Supr., 750 A.2d 1174, 1191B97 (2000)(Chandler, Chancellor, dissenting); *Ramunno v. Cawley*, Del. Supr., 705 A.2d 1029, 1035-36 (1998); *Riley v. Moyed*, Del. Supr., 529 A.2d 248, 253 (1987); *Gannett Co. v. Re*, Del. Supr., 496 A.2d 553, 557 (1985); *Ramada Inns, Inc. v. Dow Jones & Co.*, Del. Super., 543 A.2d 313, 317-18 (1987).

DIRECT AND CIRCUMSTANTIAL EVIDENCE

Do not be concerned about whether evidence is "direct evidence" or "circumstantial evidence." You should consider and weigh all of the evidence that is presented to you. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Source:
3rd Circuit Court of Appeals, Model Civil Jury Instructions, §1.6, (2004).

## OBJECTIONS- RULINGS ON EVIDENCE

From time to time during the trial I have been called upon to make rulings of law on objections or motions made by the lawyers. It is the duty of the attorneys on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. You should not show prejudice against an attorney or their clients because the attorney has made objections. You should not infer or conclude from any ruling or other comment I have made that I have any opinions on the merits of the case favoring one side or the other. And if I sustained an objection to a question that went unanswered by the witness, you should not draw any inferences or conclusions from the question itself.

Source:

3 Devitt & Blackmar, Federal Jury Practice and Instructions §70.01 (excerpt) (4th ed. 1987).

31

## CREDIBILITY OF WITNESSES

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness says or only part of it or none of it.  In deciding what to believe, you may consider a number of factors, including the following:

1.    The opportunity and ability of the witness to see or hear or know the things the witness testifies to;

2.    The quality of the witness' understanding and memory;

3.    The witness' manner while testifying;

4.    Whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

5.    Whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

6.    How reasonable the witness'' testimony is when considered in the light of other evidence that you believe; and

7.    Any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

Source:

3rd Circuit Court of Appeals, Model Civil Jury Instructions, §1.7, (2004).

32

## STIPULATION OF FACT

The parties have agreed that the following facts are true:

1.    Plaintiff Shannon Laymon ("Plaintiff") was employed by Defendant Lobby House, Inc. ("Defendant") from September 2005 until March 17, 2006.

2.    Defendant terminated Plaintiff on March 17, 2006.

3.    Plaintiff suffered a work-related injury in October 2005.

4.    Plaintiff eventually hired an attorney to assist her in getting her medical bills paid in connection with the work-related injury.

5.    General Manager Rick Anibal called Plaintiff and terminated her over the telephone on March 17, 2006.

6.    Plaintiff's boyfriend was present at the Lobby House on the majority of nights Plaintiff was working.

7.    During Plaintiff's employment, Mary Anderson and the Plaintiff were friends.

The parties have stipulated that certain facts are true, and those stipulations have been read to you during this trial.    You must therefore treat these facts as having been proved for the purposes of this case.


Source:

3rd Circuit Court of Appeals, <u>Model Civil Jury Instructions</u>, §2.4, (2004).

33

<u>DELIBERATIONS</u>

When you retire to the jury room to deliberate you may take with you these instructions, your notes, and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is you job, not mine, and nothing I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and

34

impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change you opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more things about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of question for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and

35

sign the form.  You will then return to the courtroom and your foreperson will give your verdict.  Unless I direct you otherwise, do not reveal your answers until you are discharged.  After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

Source:

3rd Circuit Court of Appeals, <u>Model Civil Jury Instructions</u>, §3.1, (2004).

## CERTIFICATE OF SERVICE

I hereby certify that I have caused copies of the following:

### JOINT PROPOSED FINAL JURY INSTRUCTIONS

to be served upon:


Ronald G. Poliquin, Esquire
Young Malmberg & Howard, P.A.
30 The Green
Dover, DE 19901

via electronic service on ~~July~~ *august* 18, 2008.


SCHMITTINGER & RODRIGUEZ, P.A.

BY:_____
    NOEL E. PRIMOS
    Bar I.D. # 3124
    414 S. State Street
    P.O. Box 497
    Dover, DE 19903
    (302) 674-0140
    Attorney for Plaintiff